UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES<br><br>          Plaintiff,<br><br>  v.<br><br>ANITA SHARMA,<br><br>          Defendant. | No. 2:13-CR-00084-JAM-3<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR ORDER RECOMMENDING PLACEMENT ON HOME CONFINEMENT** |

Anita Sharma requests that the Court recommend to the Bureau of Prisons that she serve the remainder of her sentence—20 months—on home confinement.[1] Request for Judicial Recommendation ("Mot."), ECF No. 326. The government "takes no position" on Sharma's request, but notes that granting the motion might contravene 18 U.S.C. § 3621(b)(4) per Rodriguez v. Copenhaver, 823 F.3d 1238, 1242 (9th Cir. 2016). Response to Def.'s Request ("Response"), ECF No. 332. The Court finds Rodriguez inapplicable here, given that (1) the sentencing judge is permanently unavailable, and (2) the undersigned does not have a

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g).

1

conflict of interest.  Absent Ninth Circuit precedent to the contrary, this Court finds the most reasonable interpretation of 18 U.S.C. § 3621(b)(4) is one that allows a non-conflicted member of the court that sentenced a defendant to make placement recommendations to the BOP—even after the sentencing judge is no longer available.

For the reasons discussed below, the Court grants Sharma's request, and recommends BOP release her to home confinement for the remainder of her sentence.

## I.   BACKGROUND

In November 2017, a jury convicted Sharma of mail fraud, 18 U.S.C. § 1341; bank fraud, 18 U.S.C. § 10254; and making false statements to a federally-insured bank, 18 U.S.C. § 1014. Verdict as to Anita Sharma, ECF No. 149.  Judge Burrell sentenced Sharma to 46 months' imprisonment, followed by 24 months of supervised release, and ordered her to pay $603,180.93 in restitution.  November 9, 2018 Mins., ECF No. 257.  Sharma and her two co-defendants appealed their convictions.  Notices of Appeal, ECF Nos. 254, 265-66.  The consolidated appeal is pending in the Ninth Circuit.  United States v. Sharma, et al., CA Nos. 18-10460, 18-10465, 18-10466.

Over the past four months, the novel coronavirus known as COVID-19 has found its way into and throughout the federal prisons.  As of June 19, 2020, over 6,200 federal inmates across the country have tested positively for COVID-19; 87 have died. See COVID-19 Coronavirus, FEDERAL BUREAU OF PRISONS, http://www.bop.gov/coronavirus (last accessed June 24, 2020).

CDC research reveals that individuals with diabetes, hypertension and/or serious heart conditions are among those at a high risk for contracting COVID-19 and suffering complications. See Coronavirus Disease 2019 (COVID-19), CENTER FOR DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last accessed June 24, 2020). Sharma is 58 years old. She has diabetes and a well-documented history of high blood pressure. Sentencing Memo. by Anita Sharma at 3, ECF No. 245; Stanford Health Care Report at 1-4, ECF No. 245-1. In August 2018, Sharma had a heart attack. Stanford Health Care Report at 1.

## II.   OPINION

### A.   Legal Standard

The BOP considers several factors when designating an individual's place of imprisonment, including "recommendations of the sentencing court." 18 U.S.C. § 3621(b). At the time of sentencing, the sentencing court may recommend placement at a specific federal correctional institution. After imposing a sentence, the court may also recommend an inmate be placed in a residential reentry facility or home confinement. United States v. Robles, 2:12-cr-00424-TLN, 2020 WL 1904709, at *1 (E.D. Cal. Apr. 17, 2020); United States v. Shabudin, No. 11-cr-00664, 2020 WL 2464751, at *3 (N.D. Cal. May 12, 2020). Notwithstanding the sentencing court's authority to make recommendations, those recommendations do not have a "binding effect" on the BOP. 18 U.S.C. § 3621(b)(5).

In ordinary times, federal law only permitted the BOP to

3

place inmates in home confinement for 10% of their sentence or six months—whichever was shorter. 18 U.S.C. § 3624(c)(2). But in the wake of the COVID-19 pandemic, Congress enacted the CARES Act. The CARES Act permits the BOP to lengthen the maximum time an inmate may be placed in home confinement "if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau." CARES Act, § 12003(b)(2), Pub. L. No. 116-136, 134 Stat. 281 (2020). On April 3, 2020, Attorney General Barr made this finding. Memo. from Attorney General to Director of Bureau of Prisons (April 3, 2020), available at https://www.justice.gov/file/1266661/download.

B.  Analysis

Sharma requests the Court make a recommendation to the BOP that she be placed in home confinement for the remaining 20 months of her sentence. Mot. at 1. The government "takes no position" on Sharma's request but notes "[i]t may be error for the BOP to consider after-the fact sentencing recommendations made by a judge other than the judge who imposed the sentence." Response at 2 (citing Rodriguez, 832 F.3d at 1242-43). In doing so, the government highlights two open legal questions within the Ninth Circuit: (1) whether a court may issue recommendations to the BOP after a prisoner has begun serving her sentence, and (2) whether "sentencing court" refers solely to the judge that imposed the sentence—even if that judge is retired, dead, or otherwise unavailable. See U.S. v. Roman Barrientos, No. 2:16-cr-00046-TLN, 2020 WL 1974193, at *1-2 (E.D. Cal. Apr. 24, 2020) (discussing Rodriguez, 823 F.3d at 1238-1243); U.S. v. Rehwinkel, No. 12-cr-217, 2018 WL 2389711, at *2-3 (E.D. Wis.

4

May 24, 2018) (collecting cases).

With respect to the issue of whether sentencing courts have the authority to make placement recommendations after the sentence has been imposed, District courts within the Ninth Circuit seem to be in agreement that they wield this authority. See, e.g., United States v. Collins, No. 2:15-cr-00176-7-TLN, 2018 WL 1157508, at *1-2 (E.D. Cal. Mar. 5, 2018); Shabudin, 2020 WL 2464751, at *3; Montes v. United States, No. 2:14-cr-00684, 2019 WL 102373, at *1 (C.D. Cal. Jan. 4, 2019); United States. v. Brattin, No. 2:13-cr-00161, 2016 WL 4467897, at *2-3 (D. Nev. Aug. 23, 2016); United States v. Palacios, No. 05CR2203 IEG, 2007 WL 2410389, at *3 (S.D. Cal. July 14, 2007). The text of 18 U.S.C. § 3621(b) does not counsel otherwise. Hence, the Court finds no reason to disturb this sensible consensus.

The question raised by Rodriguez is a closer one. Rodriguez was charged with several offenses related to his alleged assault on a federal judge. 823 F.3d at 1240. Following his arrest, Rodriguez appeared in the United States District Court for the Southern District of Florida. As the victim's friends and colleagues, all of the federal judges within the district had to recuse themselves. Id. The Eleventh Circuit appointed a judge from another district to sit by designation and preside over the case. Id. Ultimately, a jury convicted Rodriguez of two firearm offenses but acquitted him of assault. Id. The out-of-district judge sentenced Rodriguez to a 272-month term of imprisonment but failed to state whether the sentence would run concurrently with or consecutively to a pending state-court sentence. Id.

Rodriguez requested the BOP retroactively give him credit toward his federal sentence for the time he served in state custody. Id. at 1240. The BOP requested a recommendation from the out-of-district judge, but inadvertently sent the request to the Southern District of Florida. The chief judge of the district, rather than forwarding the request to the sentencing judge, recommended that the BOP deny Rodriguez's request. Id. at 1241. It did. Id.

The Ninth Circuit held the BOP acted contrary to federal law by considering the recommendation of a judge "who was both recused from Rodriguez's case and was not the sentencing judge." Id. at 1242. Rodriguez principally focused on the due process rights implicated when a judge participates in a case notwithstanding a conflict of interest. Id. at 1243. When the recused judge "presented his recommendation under the guise of a neutral adjudicator," he did away with any "appearance of justice" and deprived Rodriguez of his "due process rights to a neutral adjudication." Id.

As is relevant here, Rodriguez stands for two propositions: (1) when available, the judge who imposed a prisoner's sentence retains sole authority to make placement recommendations for that individual, and (2) the BOP may never accept an inmate-placement recommendation from a judge with a conflict of interest. Id. at 1242-43. Neither proposition applies to this case. See Roman Barrientos, 2020 WL 1974193, at *1-2. Judge Burrell, the sentencing judge, took inactive status last year and is therefore unavailable. The clerk's office reassigned the case to the undersigned. After careful review, the undersigned

6

finds he does not have a conflict of interest.

The text of 18 U.S.C. § 3621(b) supports a narrow reading of Rodriguez, 823 F.3d at 1242-43. Section 3621(b) refers to "recommendations of the sentencing court," not the sentencing judge. 18 U.S.C. § 3621(b) (emphasis added). Rodriguez established a mandatory preference for the sentencing judge when that judge is available. But a common-sense reading of section 3621(b) suggests that one judge's decision to retire does not strip the entire court of its ability to make placement recommendations for inmates sentenced within the district.

Having found the undersigned has authority to make a placement recommendation here, the Court also finds Sharma's requested recommendation is appropriate. Due to Sharma's age and underlying health conditions, she is at a high risk for contracting COVID-19 and suffering complications. See Coronavirus Disease 2019 (COVID-19), CENTER FOR DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last accessed June 19, 2020); Sentencing Memo. by Anita Sharma at 3; Stanford Health Care Report at 1-4. Although none of FCI Dublin's inmates have tested positively for COVID-19 yet, at least one staff member within the facility has. See Mot. at 6 (citing BOP, https://www.bop.gov/coronavirus/). Moreover, the true picture of FCI Dublin's conditions remains fuzzy, as the facility's testing efforts have, so far, been unexceptional. FCI Dublin houses 872 inmates. General Inmate Population Reports, https://www.bop.gov/about/statistics/population_statistics.jsp. FCI Dublin has only tested 48 of those inmates: 27 tests came

back negative and 21 are still pending.  COVID-19 Coronavirus, FEDERAL BUREAU OF PRISONS, http://www.bop.gov/coronavirus (last accessed June 24, 2020).

Facilities such as FCI Lompoc and FCI Oakdale I illustrate the difficulty of containing COVID-19 once it enters a prison. See COVID-19 Coronavirus, FEDERAL BUREAU OF PRISONS (reporting 920 COVID-19 infections at FCI Lompoc and 210 COVID-19 infections at FCI Oakdale I).  Indeed, the CDC confirms what these facilities suggest. See COVID-19 in Correctional and Detention Facilities, CENTER FOR DISEASE CONTROL, https://www.cdc.gov/mmwr/volumes/69/wr/mm6919e1.htm (last accessed June 24, 2020) ("Many facilities face significant challenges in controlling the spread of highly infection pathogens such as SARS-CoV-2.").  Federal correctional facilities are best-positioned to protect their most susceptible inmates before an outbreak occurs—not after.

The Court finds proactive steps are particularly appropriate here where Sharma poses a low risk of recidivism or danger to the public.  Prior to this conviction, Sharma had never been involved in criminal activity.  PSR ¶¶ 44-53.  Moreover, the convictions here are for non-violent crimes.  Sharma must take responsibility for her actions, but it appears to the Court that her criminal conduct largely flowed from her financial insecurity.  PSR ¶¶ 70-71.  Sharma's two sons are adults now.  One of them has a full-time job and is "willing to provide for [Sharma's] financial needs." Mot. at 8.  The Court finds this adequately addresses the main catalyst for Sharma's criminal involvement.  The government does not provide any reasons why Sharma would not be a good candidate for home confinement. The Court therefore

recommends a home confinement placement for Sharma for the remainder of her sentence.

### III. RECOMMENDATION

For the reasons set forth above, the Court grants Sharma's request and recommends to BOP that she be placed on home confinement for the remainder of her sentence.

IT IS SO ORDERED.

Dated: June 25, 2020

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE